IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARDS AND ANDERSON, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PENINSULA PETROLEUM, LLC,<br><br>Defendant. | Case No. 25-cv-00882-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** |

Before the Court is defendant Peninsula Petroleum, LLC's ("Peninsula") Motion, filed March 28, 2025, "to Dismiss Plaintiff's First Amended Complaint." Plaintiff Edwards and Anderson, Inc. ("E&A") has filed opposition, to which Peninsula has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.

In the operative complaint, the First Amended Complaint ("FAC"), E&A asserts claims under the Petroleum Marketing Practices Act ("PMPA"). As the Supreme Court has explained, the PMPA, which was enacted in 1978, "limits the circumstances under which petroleum franchisors may 'terminate' a franchise or 'fail to renew' a franchise relationship." See Mac's Shell Service, Inc. v. Shell Oil Products Co., 559 U.S. 175, 177 (2010) (quoting 15 U.S.C. § 2802).

Under the PMPA, "a 'franchise' is defined as 'any contract' that authorizes a franchisee to use the franchisor's trademark, as well as any associated agreement providing for the supply of motor fuel or authorizing the franchisee to occupy a service station owned by the franchisor." See id. at 178-79 (quoting 15 U.S.C. § 2801(1)). Here, E&A alleges that, prior to March 19, 2024, E&A and Peninsula were in a "franchise

relationship," which franchise was "comprised of three elements" (see FAC ¶¶ 10, 24), namely, (1) a "contract for the supply of motor gasoline" (see FAC ¶10), (2) a "contract . . . granting the right to sell motor fuel under a trademark owned or controlled by a refiner," specifically, the "Shell brand name" (see FAC ¶¶ 8, 10) and (3) three leases "authorizing [E&A] to occupy leased marketing premises," specifically, gasoline stations located in Salinas, California, Seaside, California, and Freedom, California (see FAC ¶¶ 6, 10). As discussed below, E&A alleges that Peninsula terminated the franchise agreements under which E&A leased the subject stations, and did so in a manner that did not comply with the PMPA; alternatively, E&A alleges that Peninsula unlawfully failed to renew two of the lease agreements.

In its motion to dismiss, Peninsula argues E&A has failed to plead any facts to support a finding that Peninsula violated the PMPA.

**A. Termination**

"[T]he [PMPA] provides that no franchisor may terminate any franchise, except for an enumerated reason and after providing written notice." Mac's Shell Service, 559 U.S. at 182 (internal quotation, alteration, and citation omitted).

In support of its claim that the franchise leases were improperly terminated, E&A alleges that, as of March 19, 2024, Peninsula transferred to a company called "H&S" the franchise agreements to supply motor gasoline and to grant E&A the right to use the Shell brand name, but did not transfer the leases. (See FAC ¶¶ 14-15.) According to E&A, the assignment of the non-lease components of the franchise constituted a termination of "the franchise component of the dealer lease franchise" (see FAC ¶ 16), and that such "termination" was unlawful because Peninsula failed to provide a "Notice of Termination of the PMPA franchise lease" (see FAC ¶ 19).

In its motion, Peninsula argues that, once it transferred the non-lease components of the franchise agreement to H&S, Peninsula no longer was subject to the PMPA, and, consequently, no claim under the PMPA can be asserted against it. Peninsula, however, cites no authority in support of its interpretation of the PMPA, and the absence of any

2

1  such authority is unsurprising, given the following explanation by Congress as to its
2  reason for enacting the PMPA:

> The term "franchise" is defined in terms of a motor fuel trademark license. It should be noted that the term is applicable only to the use of a trademark which is owned or controlled by a refiner.  Secondary arrangements, such as leases of real property or motor fuel supply agreements, are incorporated in the definition of a franchise.  Therefore, the substantive provisions of the title, relating to the termination of a franchise or non-renewal of the franchise relationship, may not be circumvented by a termination or non-renewal of the real estate lease or motor fuel supply agreement which thereby renders the trademark license valueless.

See S. Rep. No. 95-731, at 29 (1978).[1]  Here, if Peninsula were no longer subject to the PMPA by the mere fact that it transferred the non-lease components of the franchise to H&S, it could terminate the leases for reasons not allowed by the PMPA, thereby rendering H&S's right to use the Shell mark "valueless," an outcome wholly at odds with congressional intent.  See id.; see also Humboldt Oil Co. v. Exxon Co., 695 F.2d 386, 389 (9th Cir. 1982) (noting PMPA "must be given a liberal construction consistent with its goal of protecting franchisees").

Accordingly, the Court finds the FAC is not subject to dismissal on the asserted ground that, as of March 19, 2024, Peninsula was no longer subject to the PMPA.

The Court next turns to E&A's allegation that a termination of the franchise lease agreements occurred on March 19, 2024.

A "termination" of a franchise occurs only when a franchise is "put to an end or annulled or destroyed"; consequently, a "franchisee who continues operating a franchise – occupying the same premises, receiving the same fuel, and using the same trademark – has not had the franchise terminated."  See Mac's Shell Service, 559 U.S. at 184 (internal quotations, alteration, and citation omitted); see also, e.g., Poquez v. Suncor Holdings-COPII, LLC, 2011 WL 4351612, at *1, *4 (N.D. Cal. September 15, 2001) (holding franchisor's sale of leased property to third party did not "destroy[ ] the franchise" where plaintiff continued to use the premises to sell branded gasoline).

---

[1] A copy of the quoted Senate Report is attached to E&A's opposition as Exhibit A.

3

Here, E&A does not allege that it no longer occupies the same premises it had been using prior to March 19, 2024, or that it no longer is receiving and selling Shell-branded fuel at those locations.

Accordingly, to the extent the FAC asserts a claim that Peninsula terminated the lease franchise without complying with the PMPA's notice requirements, the FAC is subject to dismissal.

**B. Nonrenewal**

The PMPA provides that a franchisor cannot "fail to renew a franchise relationship for a reason not provided for in the [PMPA] or after not providing the required notice." See Mac's Shell Service, 559 U.S. at 191.

In support of its claim that Peninsula improperly failed to renew the franchise leases, E&A alleges that Peninsula, on a date not disclosed in the FAC, "offered a shortened term of one year" for the leases (see FAC ¶ 18),[2] and, on February 13, 2025, "sent a letter by certified mail" titled "Notice of Nonrenewal of Retail Facility Leases for the Salinas and Seaside Stations" ("Notice of Nonrenewal") (see FAC ¶ 20).  With respect to the third station, E&A alleges that "Peninsula will seek to terminate the franchise lease agreement for the Freedom station in the same manner."  (See FAC ¶ 22.)

With respect to the Freedom station, Peninsula argues that any claim based on nonrenewal is not ripe.  The Court agrees, as "the threshold requirement of any unlawful nonrenewal action . . . is that the franchisor did not reinstate, continue, or renew the franchise agreement once a franchise agreement expired," see Mac's Shell Service, 559 U.S. at 191 (internal quotation and citation omitted), and, according to E&A, the franchise lease for the Freedom station has not yet expired.

---

[2] E&A alleges that the "most current term" of the leases was for three years, and, in particular, that the leases for the Salinas and Seaside stations were from January 1, 2022, through December 31, 2024, and that the lease for the Freedom station began on January 1, 2023, and will expire on December 31, 2025.  (See FAC ¶ 7.)

4

With respect to the Salinas and Seaside stations, Peninsula first argues that it "had grounds under the PMPA to not renew," namely, E&A's "failure to agree to terms," specifically, a lease of one year in length (see Def.'s Mot. at 9:18-19), and, consequently, its non-renewal did not violate the PMPA.

"[T]he PMPA contemplates that franchisors can respond to market demands by proposing new and different terms at the expiration of a franchise agreement." Mac's Shell Service, 559 U.S. at 192.  "To that end, the [PMPA] authorizes franchisors to decline to renew a franchise relationship if the franchisee refuses to accept changes or additions that are proposed 'in good faith and in the normal course of business' and that are not designed to convert the service station to direct operation by the franchisor." Id. (quoting 15 U.S.C. § 2802(b)(3)(A)).

Peninsula's argument that its non-renewal was lawful under the above-quoted standard is, however, premature.  "A nonrenewal letter must indicate by its language which section of the PMPA provides the grounds for nonrenewal, and grounds not included in the notice may not be relied upon." Svela v. Union Oil Co., 807 F.2d 1494, 1499 (9th Cir. 1987).  Here, the FAC does not state what grounds, if any, were set forth in the Notice of Nonrenewal, nor has Peninsula submitted a copy of that document and requested the Court take judicial notice.  Moreover, even assuming the Notice of Nonrenewal did state the reason was E&A's failure to agree to the proposed shortened term, Peninsula fails to point to any allegation in the FAC demonstrating, at the pleading stage, that Peninsula's proposal was made in good faith, made in the normal course of its business, and not designed to convert the Salinas and Seaside stations to direct operation by Peninsula.  See id. at 1497 (holding "franchisor bears the burden of establishing as an affirmative defense that nonrenewal was permitted under one of the statutorily enumerated grounds"); see also ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014) (holding dismissal for failure to state claim on basis of affirmative defense "is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint").

Nevertheless, as Peninsula further argues, E&A fails to allege that the Notice of Nonrenewal was deficient. In that regard, E&A does not allege the Notice of Nonrenewal was based on a reason not listed as acceptable in the PMPA, see 15 U.S.C. § 2802(b)(2)-(3) (setting forth "grounds" for "nonrenewal of a franchise relationship") or that the Notice of Nonrenewal was deficient in some other manner, see 15 U.S.C. § 2804(c) (setting forth "manner and form of notification").[3] In the absence of any such allegation, E&A fails to state a claim of improper nonrenewal as to the Salinas and Seaside station leases. See Mac's Shell Service, 559 U.S. at 191.

Accordingly, to the extent the FAC asserts a claim that Peninsula improperly failed to renew the franchise lease agreements, the FAC is subject to dismissal.

**CONCLUSION**

For the reasons stated above, Peninsula's motion to dismiss is hereby GRANTED, the First Amended Complaint is DISMISSED for failure to state a claim, and E&A is hereby afforded leave to amend.

If E&A wishes to file a Second Amended Complaint for purposes of curing the deficiencies identified above, it shall file such pleading no later than May 30, 2025.

**IT IS SO ORDERED.**

Dated: May 7, 2025

MAXINE M. CHESNEY
United States District Judge

---

[3] Although E&A alleges Peninsula has failed to "make or present to E&A a bona fide offer to sell, transfer or assign to E&A . . . Peninsula's interest in the three stations" (see FAC ¶ 21), such requirement only applies where a franchisor's notice of nonrenewal is based on the franchisor's determination "to withdraw from the marketing of motor fuel through retail outlets in the relevant geographic area in which the marketing premises are located," see 15 U.S.C. § 2802(b)(2)(E), and, as noted, E&A fails to allege what reason, if any, Peninsula provided in the Notice of Nonrenewal.