IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARDS AND ANDERSON, INC., <br><br> Plaintiff, <br><br> v. <br><br> PENINSULA PETROLEUM, LLC, <br><br> Defendant. | Case No. 25-cv-00882-MMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

Before the Court is defendant Peninsula Petroleum, LLC's ("Peninsula") Motion, filed June 13, 2025, "to Dismiss Plaintiff's Second Amended Complaint." Plaintiff Edwards and Anderson, Inc. ("E&A") has filed opposition, to which Peninsula has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

In the operative complaint, the Second Amended Complaint ("SAC"), E&A asserts a single claim, titled First Cause of Action, brought under the Petroleum Marketing Practices Act ("PMPA"), an Act that "limits the circumstances under which petroleum franchisors may 'terminate' a franchise or 'fail to renew' a franchise relationship." See Mac's Shell Service, Inc. v. Shell Oil Products Co., 559 U.S. 175, 177 (2010) (quoting 15 U.S.C. § 2802).

Under the PMPA, "a 'franchise' is defined as 'any contract' that authorizes a franchisee to use the franchisor's trademark, as well as any associated agreement providing for the supply of motor fuel or authorizing the franchisee to occupy a service

---

[1] By order filed July 11, 2025, the Court took the matter under submission.

station owned by the franchisor." See id. at 178-79 (quoting 15 U.S.C. § 2801(1)).  Here, E&A alleges that, prior to March 19, 2024, E&A and Peninsula were in a franchise relationship, which franchise was "comprised of three elements" (see SAC ¶¶ 7, 10), namely, (1) a "contract for the supply of motor gasoline" (see SAC ¶10), (2) a "contract grant[ing] the right to sell motor fuel under a trademark owned or controlled by a refiner," specifically, the "Shell brand name" (see SAC ¶¶ 8, 10) and (3) three "lease[s] to occupy Leased Marketing Premises to sell motor fuel," specifically, gasoline stations located in Salinas, California, Seaside, California, and Freedom, California (see SAC ¶¶ 6, 10).  As discussed below, E&A alleges that Peninsula unlawfully terminated or failed to renew the franchise agreements.

By order filed May 7, 2025, the Court dismissed the First Amended Complaint for failure to state a claim under the PMPA, and afforded E&A leave to amend.  In the instant motion to dismiss, Peninsula argues that E&A has again failed to plead facts to support a finding that Peninsula violated the PMPA.

**A. Termination/Nonrenewal in March 2024**

E&A alleges that, effective March 19, 2024, Peninsula transferred to a company called "H&S" the franchise agreements to supply motor gasoline and to grant E&A the right to use the Shell brand name, but not the leases.  (See SAC ¶¶ 14-15.)  According to E&A, the assignment of the non-lease components of the franchise constituted a termination of "the franchise relationship" (see SAC ¶ 16) and/or a "nonrenewal" of the franchise (see SAC ¶ 18), and that Peninsula, in violation of the PMPA, did not give notice that the franchise was being "terminated or nonrenewed" and "did not state the basis for termination or nonrenewal" (see SAC ¶ 21).

"[T]he [PMPA] provides that no franchisor may terminate any franchise, except for an enumerated reason and after providing written notice."  Mac's Shell Service, 559 U.S. at 182 (internal quotation, citation, and alteration omitted).  Similarly, the PMPA provides that a franchisor cannot "fail to renew a franchise relationship for a reason not provided for in the [PMPA] or after not providing the required notice."  See id. at 191.  A franchisee

can bring a civil action to challenge a termination or nonrenewal and, in such action, has "the burden of proving the termination of the franchise or nonrenewal," while the franchisor has "the burden of going forward with evidence to establish as an affirmative defense that such termination or nonrenewal was permitted under section 2802(b) [of the PMPA]."[2]  See 15 U.S.C. § 2805(c).

A "termination" of a franchise occurs only when such franchise is "put to an end or annulled or destroyed," and, consequently, if, after a change of circumstances such as an assignment occurs, the franchisee "continues operating a franchise – occupying the same premises, receiving the same fuel, and using the same trademark – [the franchisee] has not had the franchise terminated."  See Mac's Shell Service, 559 U.S. at 184 (internal quotations, citation, and alteration omitted).

As Peninsula argues and E&A acknowledges, a transfer by the initial franchisor of the "three elements" to another who continues to provide those "elements" to the franchisee does "not constitute a termination."  See Fresher v. Shell Oil Co., 846 F.2d 45, 46-47 (9th Cir. 1988).  As Peninsula also argues, and contrary to E&A's argument, the transfer of some, but not all, of the three elements does not constitute a termination or nonrenewal, so long as the franchisee continues to occupy the same premises, receive the same fuel, and has the right to use the same trademark.  See, e.g., Duncan Services, Inc. v. ExxonMobil Oil Corp., 722 F. Supp. 2d 640, 644-46 (D. Md. 2010) (holding where initial franchisor sold to an entity land leased to franchisee and assigned other elements of franchise to another entity, such transfers did not constitute "termination or non-renewal" of franchise, as franchisee continued to rent same property, continued to receive same fuel, and continued to have permission to use same trademark); Poquez v. Suncor Holdings-COPII, LLC, 2011 WL 4351612, at *1, *4 (N.D. Cal. September 15, 2001) (holding franchisor's sale of property to third party did not "destroy[ ] the franchise"

---

[2] Section 2802(b) sets forth several "grounds" upon which a franchisor can rely to terminate or fail to renew a franchise.  See 15 U.S.C. § 2802(b)(2)-(3).

where plaintiff continued to use premises to sell branded gasoline; referring to new landlord as "franchisor of [p]laintiff's [gas station]").

Here, E&A does not allege it no longer occupies the premises it had been using prior to March 19, 2024, or that it no longer is receiving and selling Shell-branded fuel at those locations.

Accordingly, to the extent the SAC asserts Peninsula unlawfully terminated or failed to renew the franchise, based on its having assigned two of the three elements comprising the franchise, the SAC is subject to dismissal.

Further, as a partial assignment does not constitute a termination of a franchise where, as here, the franchisee continues to sell the same gasoline under the same trademark at the same location, E&A will not be afforded further leave to amend.

**B. Nonrenewal in February 2025**

E&A alleges that, on February 13, 2025, Peninsula sent E&A a "Notice of Nonrenewal of Retail Facility Leases," stating Peninsula would not renew the leases for the stations in Salinas and Seaside, California. (See SAC ¶ 16; Ex. 2.) The stated basis for the nonrenewal was "the failure of [the parties'] good faith efforts to renew the Leases upon the expiration on December 31, 2024" and E&A's "failure to agree to the terms of renewed lease agreements, which were offered in good faith and in the normal [course] of business." (See SAC Ex. 2.) With respect to the station in Freedom, California, for which E&A's lease is still in effect but expires December 31, 2025, E&A alleges "[i]t is only time before the next non-renewal notice is received." (See SAC ¶ 25.)

As to the Freedom station, Peninsula contends any claim based on nonrenewal is not ripe. The Court agrees, as "the threshold requirement of any unlawful nonrenewal action . . . is that the franchisor did not reinstate, continue, or renew the franchise agreement once a franchise agreement expired," see Mac's Shell Service, 559 U.S. at 191 (internal quotation and citation omitted), and, as noted, E&A alleges the lease for the Freedom station has not yet expired.

//

With respect to the Salinas and Seaside stations, Peninsula argues it "had grounds under the PMPA" not to renew, namely, the parties' failure to agree to changes Peninsula states it proposed "in good faith and in the normal course of business" (see Def.'s Mot. at 10:10-12), and, consequently, its non-renewal did not violate the PMPA.

The grounds stated in the notice, if established by "evidence," may well constitute a cognizable "affirmative defense" to E&A's challenge to the nonrenewal of the leases for the Salinas and Seaside stations. Indeed, "the PMPA contemplates that franchisors can respond to market demands by proposing new and different terms at the expiration of a franchise agreement," see Mac's Shell Service, 559 U.S. at 192, and, "[t]o that end, the [PMPA] authorizes franchisors to decline to renew a franchise relationship if the franchisee refuses to accept changes or additions that are proposed 'in good faith and in the normal course of business' and that are not designed to convert the service station to direct operation by the franchisor," see id. (quoting 15 U.S.C. § 2802(b)(3)(A)).

At this stage of the litigation, however, Peninsula cannot offer, and has not offered, evidence to demonstrate that the asserted grounds set forth in the notice are the reason for the nonrenewal. Nor has Peninsula pointed to any allegation in the SAC demonstrating that Peninsula's proposal was made in good faith, made in the normal course of its business, and not designed to convert the Salinas and Seaside stations to direct operation by Peninsula. See Svela v. Union Oil Co., 807 F.2d 1494, 1497 (9th Cir. 1987) (holding "franchisor bears the burden of establishing as an affirmative defense that nonrenewal was permitted under one of the statutorily enumerated grounds"); see also ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014) (holding dismissal for failure to state claim on basis of affirmative defense "is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint"). Indeed, E&A's allegations are to the contrary. (See SAC ¶ 20 (alleging Peninsula's "intent" when it issued the notice of nonrenewal "was to take over control over [the] premises for its own use and benefit").)

//

Accordingly, to the extent the SAC asserts Peninsula will fail to renew the lease for the Freedom station, the SAC is subject to dismissal without prejudice on grounds of ripeness, and, to the extent the SAC asserts Peninsula unlawfully failed to renew the leases for the Salinas and Seaside stations, the SAC is not subject to dismissal.

**CONCLUSION**

For the reasons stated above, Peninsula's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows.

1. To the extent the First Cause of Action is based on the allegation that Peninsula unlawfully terminated or failed to renew the franchise by reason of its having assigned two of the three elements comprising the franchise, the motion is GRANTED.

2. To the extent the First Cause of Action is based on the allegation that Peninsula will fail to renew the lease for the Freedom station, the motion is GRANTED.

3. To the extent the First Cause of Action is based on the allegation that Peninsula unlawfully failed to renew the leases for the Salinas and Seaside stations, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 31, 2025

MAXINE M. CHESNEY
United States District Judge